IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. WR-55,850-02






EX PARTE ARTURO ELEAZAR DIAZ, Applicant







ON APPLICATION FOR A WRIT OF HABEAS CORPUS

IN CAUSE NO. CR-1464-99-G FROM THE

370TH DISTRICT COURT OF HIDALGO COUNTY



 

 Alcala, J., filed a concurring statement in which Cochran, J., joined.


CONCURRING STATEMENT



 I respectfully concur in this Court's dismissal of the subsequent application for a writ
of habeas corpus filed by Arturo Eleazar Diaz, applicant. I write separately because my
decision rests in part on the merits of the application rather than merely on the procedural
bar. See Tex. Code Crim. Proc. art. 11.071,§5(a). (1)
 Even if this Court were to consider the
merits of applicant's claims, applicant has failed to make a preliminary showing that there
is a reasonable probability that, but for trial counsel's unprofessional errors, the result of the
proceeding would have been different. Wiggins v. Smith, 539 U.S. 510, 534 (2003);
Strickland v. Washington, 466 U.S. 668, 694 (1984). Furthermore, because the affidavits
presented in this application were prepared in 2004 but presented to this Court within a week
of applicant's impeding execution, applicant's delay in presenting his claim seriously
impedes the credibility of his arguments. (2) 

 In Wiggins, the Supreme Court found trial counsel ineffective and reversed the
conviction, explaining that "[h]ad the jury been able to place petitioner's excruciating life
history on the mitigating side of the scale, there is a reasonable probability that at least one
juror would have struck a different balance." Id. at 537. The mitigation evidence not
presented to the jury in Wiggins included "physical torment, sexual molestation, and repeated
rape." Id. at 535.

In contrast, the evidence presented in this application cannot reasonably be classified
as mitigation evidence that might cause even one juror to reach a different result. In his own
affidavit presented in this application, applicant himself, even now, does not suggest that
there is any mitigation evidence. Applicant's affidavit states, "Mr. Reyes [trial counsel]
visited me in jail before trial and asked whether I had been abused as a child or if I knew
anything else that could help my case. Because I did not know what, if anything, would help
me, I could not provide him any information." In his own affidavit attached to this
application, applicant does not describe any evidence that might serve to mitigate his
punishment. 

The primary suggestion of mitigation focuses on applicant's poverty as a child. When
applicant lived with his mother during the first five years of his life, she did not provide
adequate food and supervision, but it appears from the affidavits that during this time he
lived near his grandmother, who would provide him with food and supervision when he and
his sister would arrive at her house. When applicant lived with his grandmother beginning
at five years of age, he lived in a home that was extremely modest without indoor plumbing,
family funds were limited, and meals were simple. But these circumstances are
counterbalanced by evidence that applicant's family received income through Social Security
benefits and working as laborers; applicant slept indoors; he ate beans and soup "many days"
and the family received food stamps to obtain food; and the home could be heated, was
partially air conditioned, and had water with which to bathe. I cannot conclude that there is
a reasonable probability that a juror would have found these circumstances sufficient to
warrant a sentence of life instead of death in this case. This is particularly true in light of the
fact that a great number of people living in South Texas at that time lived in similar modest
conditions. Furthermore, although I recognize that living in poverty has negative
consequences, about a quarter of all children in the United States in 1995 lived in poverty,
according to the article from the National Center for Children In Poverty that was provided
by applicant. This suggests to me that, for poverty to be a significant mitigating
circumstance, a defendant would need to show more than what has been described in this
writ record. 

The affidavits by applicant's sister, grandmother, and mother suggest other
circumstances that could arguably be classified as mitigating evidence. This evidence
includes a description of applicant as "depressed," "burn[ing] his arms with cigarettes to help
him take his mind off the pain inside," using alcohol and drugs as a teenager, and being
abandoned by his parents. Applicant's mother had poor pre-natal care and applicant was
exposed to lead-based paint as a child. These affidavits, however, have few details to explain
what was meant by "depressed," fail to state the number of times or severity of his self-inflicted burns, and do not address how the lack of adequate pre-natal care or frequency and
amount of exposure to lead-based paint may have actually impacted applicant. More
importantly, for the three reasons below, a reasonably effective attorney would not likely
have presented any testimony from these three individuals. 

First, the affidavits describe applicant as uncontrollable when he was as young as 15
years of age. Applicant's sister stated that as applicant grew older, their grandmother "was
not able to control his behavior" and, when he was 15 years old, "told the authorities that she
could not control [applicant] any longer." Applicant's grandmother states, "By the time
Arturo was fifteen years old, he also was in trouble with the law, and I was no longer able
to control him." Although applicant's sister and grandmother were willing to testify, I
conclude that an effective attorney could have reasonably declined to present their minimally
favorable testimony in light of their very damaging description of applicant as uncontrollable. 

Second, the affidavits conflict with respect to the events of applicant's background. 
On the one hand, applicant's relatives contend that he was exposed only to negative role
models because his uncles were lazy, drunk, and criminals. On the other hand, their
affidavits acknowledge the presence of two positive role models: applicant's grandmother,
who was like a mother to applicant, and applicant's grandmother's second husband, who
worked long hours picking cotton. Similarly, on the one hand, applicant's sister and
grandmother claim that his mother would put him in a locked closet while entertaining
boyfriends, but, on the other hand, his mother does not mention this and describes herself as
having had "several brief relationships with men who would live with us briefly, then leave." 
Because applicant's relatives' stories conflict with respect to the degree of hardship in
applicant's background, an effective attorney could reasonably have decided not to present
these witnesses in order not to lose credibility with the jury.

Third, some of the evidence proffered as mitigating in this application would likely
have alienated the jury. Some of the evidence stretches the bounds of what any reasonable
person might classify as evidence worthy of mitigating a sentence of death. The evidence
describes how the family had to save the shells of their eggs so that they could use them to
make confetti eggs at Easter. It also describes how the Christmas gifts stopped when
applicant became a teenager. Furthermore, when he was around 17 years of age, applicant
began living in Arizona with his mother, who expected him to pay rent, did not cook for him,
did not wash his clothes, and would not make a lunch for him to take to work. Had this type
of evidence been presented to the jury, it would in all likelihood have worked against
applicant, who might have been viewed as complaining about trivialities as an excuse for his
violent conduct. I cannot envision that any reasonable attorney would present this type of
evidence as a basis for the jury not to impose a death sentence. 

The evidence from applicant's cousin and teacher is largely the same as the evidence
described above, and none of the circumstances rise to the level of mitigation evidence
described by Wiggins. See id. at 516-18. For example, applicant's teacher describes him as
having self-esteem issues in junior high school, which would probably place him with the
majority of children at this age. 

I also note that applicant complains that a plea bargain offer was not adequately
explained to him prior to trial. He, however, acknowledges that his attorneys did convey an
offer of a life sentence to him. He claims that if he had known that he would serve 30-years'
time instead of 40-years' time, he would have taken the plea-bargain offer. His nine-year
delay in bringing this complaint makes it wholly lacking in credibility, particularly in light
of the substance of his complaint.

Whatever slight mitigating evidence may be presented by applicant at this late date,
I cannot conclude that there is a reasonable probability that at least one juror might have
reached a different result had he heard it. The record shows that applicant was found guilty
in 2000 for his role in causing the death of one man who was repeatedly stabbed by applicant
while applicant's companion forcefully held the man, and for stabbing another man on the
neck and head. Shortly before that, he killed another man by kicking him in the head while
applicant's companion stomped the man's face. Furthermore, at the time of these events, he
was a member of a violent local street gang.

In light of the aggravating facts and applicant's failure to make a preliminary showing
of substantial mitigating evidence that was not presented to the jury, applicant has not shown
that, but for counsel's unprofessional errors, the result of the proceeding would have been
different. See id. I, therefore, join this Court's order dismissing this application.

Filed: September 23, 2013

Do Not Publish


 
1. 
[1] I have previously urged this Court to consider the merits of a substantial claim of ineffective
assistance of trial counsel raised in a subsequent 11.071 application if that claim was forfeited as a
result of ineffective assistance of initial habeas counsel. See Ex parte McCarthy, No. WR-50360-04,
2013 WL 3283148, at *5 (Tex. Crim. App. June 24, 2013) (Alcala, J., dissenting) (not designated
for publication). Although I adhere to the general position I took in McCarthy, I conclude that the
applicant in this case has failed to make a preliminary showing that his underlying Wiggins claim
is substantial for purposes of overcoming the statutory bar on subsequent writs. See Tex. Code
Crim. Proc. art. 11.071, § 5(a). Even if this Court were to permit an applicant to raise an
ineffective-assistance claim in a subsequent writ, I maintain that such an applicant must first
preliminarily show that the underlying ineffective-assistance-of-trial-counsel claim is substantial,
which is to say that it has some merit. This requirement is in accordance with the Supreme Court's
approach in Martinez v. Ryan, 566 U.S. ___, 132 S. Ct. 1309, 1318 (2013) (requiring showing that
"substantial" ineffective-assistance-of-trial-counsel claim has "some merit" before federal court may
excuse procedural default on basis of ineffective assistance of post-conviction counsel). In the
absence of such a showing, I conclude that this application is statutorily barred. See Tex. Code
Crim. Proc. art. 11.071, § 5(a).

2. Applicant relies on Trevino v. Thaler, 133 S. Ct. 1911 (2013), decided almost four
months ago, but filed this application within a week of his scheduled execution.